UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

IN RE: FREEMAN VILLA LLC,

                        Debtor.

---------------------------------------------------------x

RAFI MANOR,
A/K/A/ RAFAEL MANOR,

                    Appellant,

          - against -

ALLAN B. MENDELSOHN,

                 Appellee.

---------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-6712 (PKC)

PAMELA K. CHEN, United States District Judge:

     Appellant Rafi Manor appeals from a September 13, 2024 Order (the "Vacatur Denial")

entered by the United States Bankruptcy Court for the Eastern District of New York (the

"Bankruptcy Court") denying Manor's motion to vacate the Bankruptcy Court's June 18, 2024

Order "holding Manor in contempt for his failure to comply with a subpoena" that the Bankruptcy

Court had issued in *In re Freeman Villa LLC*, No. 23-BK-74049 (Robert E. Grossman, Bankr. J.[1]).

(Notice ("Not.") of Appeal, Dkt. 1, at ECF[2] 1; *see id.*, at ECF 4–7.)  The Vacatur Denial also

ordered Manor to appear for an oral deposition in compliance with the subpoena.  (*See id.* at

---

    [1] Although Judge Grossman entered the Vacatur Denial, the underlying bankruptcy proceeding was first reassigned to Judge Alan S. Trust effective August 15, 2025, and then reassigned to Judge Sheryl P. Giugliano effective September 5, 2025.  (*In re Freeman Villa LLC*, No. 23-BK-74049, Dkts. 139, 141.)

    [2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

ECF 5–6.)  For the following reasons, the Vacatur Denial is affirmed and the appeal is denied in its entirety.

## BACKGROUND[3]

On October 31, 2023, Freeman Villa LLC ("Freeman Villa") filed a Chapter 11 bankruptcy petition signed by David Kenner, Freeman Villa's "authorized representative."  (Not. of Appeal, Dkt. 1, at ECF 10.)  Freeman Villa's bankruptcy case was converted to a Chapter 7 proceeding on December 1, 2023 ("Freeman Villa Chapter 7").  (*Id.*)  Appellee Allan Mendelsohn (the "Trustee") was appointed the Chapter 7 Trustee.  (*Id.*)  According to Freeman Villa's statement of financial affairs, filed on February 1, 2024, Manor "was in possession of [Freeman Villa's] books and records" when the underlying bankruptcy case was filed, and he is the "Manager of [Freeman Villa], with an address of 'Israel.'"  (*Id.*)  Freeman Villa's principal place of business, meanwhile, is listed as an address in Rockville Centre, New York, and its principal asset is located at 135 Bayard Street, Brooklyn, New York.  (*Id.*)  Manor "allegedly control[s]" Freeman Villa, and Kenner "testified . . . that he had been contacted by Manor to 'represent' the Debtor [Freeman Villa] . . . in the United States while Manor remained in Israel."  (*Id.* at ECF 10–11 (bankruptcy record citation omitted).)  The Trustee alleges that Kenner is "merely a figurehead put in place by Manor[,] who appears to be a control person relative to [Freeman Villa]."  (*Id.* at ECF 13.)

In addition to his alleged role as Freeman Villa's Manager, Manor is the "99% owner of M1 Development [LLC]" ("M1 Development"), (*id.* at ECF 9), which in turn owns at least 5% of Freeman Villa, (*id.* at ECF 10).  M1 Development also is the 99% owner of M Rental Brooklyn

---

[3] The Court draws relevant facts from the parties' briefing and sources of which the Court takes judicial notice, including the record in the underlying bankruptcy proceeding.  *See Tingling v. U.S. Dep't of Educ.*, 611 B.R. 710, 715 (E.D.N.Y. Jan. 30, 2020) ("tak[ing] judicial notice of the documents filed in [the d]ebtor's bankruptcy case" (citations omitted)).

LLC ("M Rental").  (*Id.*)  Manor himself has filed and/or signed the bankruptcy petitions in three Chapter 11 bankruptcy matters in the Brooklyn division of the Bankruptcy Court[4]: (1) a voluntary Chapter 11 petition for himself filed on April 14, 2021 (No. 21-BK-40976); (2) a Chapter 11 petition on behalf of M1 Development filed the same day (No. 21-BK-40977); and (3) a voluntary Chapter 11 petition on behalf of M Rental on November 15, 2022 (No. 22-BK-42858) (collectively, the "Manor Chapter 11s").  (*Id.* at ECF 8–9.)  The "address of record for the debtor" in each of these cases is the same: 774 Lefferts Street, Apt. 4R, Brooklyn, New York (the "Brooklyn Address").  (*Id.* at ECF 9.)  The Brooklyn Address "remains the address of record" for each as of September 9, 2024, and all three bankruptcy petitions were dismissed by the Bankruptcy Court on August 23, 2024.  (*Id.*)  Manor filed his personal Chapter 11 proceeding "with the assistance of the Law Offices of Avrum J. Rosen, PLLC" (the "Rosen Law Firm") and later retained the law office of Nutovic & Associates (the "Nutovic Law Firm"[5]) as counsel for that proceeding.  (*Id.* at ECF 8–9.)  M1 Development and M Rental were represented in their Chapter 11 proceedings by the Rosen Law Firm.  (*Id.* at ECF 9.)

On March 29, 2024, in the underlying bankruptcy proceeding, i.e., the Freeman Villa Chapter 7, the Bankruptcy Court entered an order (the "Order") authorizing the examination and subpoena of Manor (the "Subpoena") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule").  (*Id.* at ECF 11.)  On April 1, 2024, the Trustee served the Order

---

[4] These proceedings were in front of a different Bankruptcy Court judge, Judge Nancy H. Lord.  (Not. of Appeal, Dkt. 1, at ECF 9.)  Further, the Freeman Villa Chapter 7 case was filed in the Central Islip division of the Bankruptcy Court.  (*Id.*)

[5] The Nutovic Law Firm also represents Manor in this appeal.  (Not. of Appeal, Dkt. 1, at ECF 1.)  The Court also notes that the name of this firm, as appears on the docket in this case, is "Law Offices of Isaac Nutovic."  (*Id.*)

and the Subpoena on Manor by certified mail at the Brooklyn Address, and also served the counsel

in the Manor Chapter 11s, the Nutovic Law Firm and the Rosen Law Firm, by regular mail.  (*Id.*)

As just explained, at that time the Brooklyn Address was the address of record in the Manor

Chapter 11s.[6]  The Subpoena sought Manor's testimony, but no documents.  (*Id.*)  On May 6, 2024,

after Manor had not responded to the Subpoena, the Trustee moved to compel Manor's compliance

with the Order and for sanctions.  (*Id.*)  This motion was also served on Manor at the Brooklyn

Address and on both law firms acting as counsel in the Manor Chapter 11s.  (*Id.*)  On June 18, 2024,

after neither Manor nor his counsel appeared at a hearing on the Trustee's motion to compel, the

Bankruptcy Court issued a new order (the "Contempt Order"), which directed Manor's compliance

with the Order and the Subpoena and sanctioned Manor for each day of non-compliance, to begin

accruing 15 days after entry of the Contempt Order.  (*Id.*)

At some point, "Manor consented to appear for an oral deposition via a web-based

platform, such as Zoom," which was scheduled for July 10, 2024.  (Manor Br. App., Dkt. 3-1, at

ECF 60; Manor Br., Dkt. 3, at 10 n.1.)  Instead, though, 14 days after entry of the Contempt Order,

on July 2, 2024, Manor's counsel, the Nutovic Law Firm, informed the Trustee that the deposition

would not proceed and then filed a motion to vacate the Contempt Order pursuant to Rule 60(b)

of the Federal Rules of Civil Procedure ("Rule") and Bankruptcy Rules 9014 and 9023.  (Manor

Br. App., Dkt. 3-1, at ECF 60; Not. of Appeal, Dkt. 1, at ECF 12.)  Along with this motion, Manor

submitted "a Declaration, dated June 24, 2024, in which he state[d] [that] he currently lives in

---

[6] Still, on February 8, 2024, about two months prior to service at the Brooklyn Address,
the Trustee filed a Complaint in the Freeman Villa Chapter 7 wherein he wrote: "Upon information
and belief, Manor remains in Israel to avoid the jurisdiction of this Court."  (Manor Br. App.,
Dkt. 3-1, at ECF 46, 50.)  This Complaint did not specify whether the Trustee believed that Manor
had permanently relocated to Israel.

Israel; he has been living there since March 29, 2024; and he has no plans to return to the [United States] at this time." (Not. of Appeal, Dkt. 1, at ECF 12.) In his motion, Manor argued that "the Contempt Order is void due to improper service of the . . . Subpoena," and so the Contempt Order is void for lack of jurisdiction pursuant to Rule 60(b)(4). [7] (*Id.* at ECF 12–13.) The Bankruptcy Court held two hearings in its consideration of Manor's motion to vacate, at which Manor's counsel appeared. (*Id.* at ECF 13 (stating that "Manor's counsel, Isaac Nutovic," appeared at the July 31, 2024 hearing on the motion to vacate)); *In re Freeman Villa LLC*, No. 23-BK-74049, 9/9/2024 Dkt. Entry (noting Isaac Nutovic appeared at the second hearing). On September 9, 2024, during the second hearing, the Bankruptcy Court ruled from the bench and denied Manor's motion to vacate. (Not. of Appeal, Dkt. 1, at ECF 8.) On September 13, 2024, the Bankruptcy Court issued the Vacatur Denial, (Not. of Appeal, Dkt. 1, at ECF 8–20), confirming the denial of Manor's motion and explaining the Bankruptcy Court's reasoning, (*id.* at ECF 4–7). The Vacatur Denial once again directed Manor to comply with the Subpoena and to appear for a deposition. (*Id.* at ECF 6.)

Manor timely filed this appeal on September 23, 2024, contesting the Bankruptcy Court's Vacatur Denial.[8] (Manor Br., Dkt. 3, at 1.) Manor filed his appeal brief on October 11, (*id.* at 11),

---

[7] The Court analyzes and further explains the bases of Manor's objections *infra*, Discussion § I.

[8] Significant portions of Manor's brief appear to reflect the mistaken belief that he is appealing both the Contempt Order and the Vacatur Denial. (*See, e.g.*, Manor Br., Dkt. 3, at 10 ("This appeal is not about a refusal to obey an order of the Bankruptcy Court . . . ; this appeal is about preserving Manor's right to challenge the finding of the Bankruptcy Court, entered on default, that Manor contemptuously refused to abide an improperly served subpoena summoning him for examination.") In fact, Manor is not appealing both, as his notice of appeal states only that he is appealing the Vacatur Denial. (Not. of Appeal, Dkt. 1, at ECF 1 (stating that Manor "hereby appeals . . . the [Vacatur Denial] (Bankr. Dkt. No. 113)")); *see also In re Freeman Villa*

the Trustee filed his response brief on November 25, (Trustee Br., Dkt. 7, at 14), and Manor filed his reply brief on November 26, (Manor Reply, Dkt. 9, at 9).

## LEGAL STANDARD

Under 28 U.S.C. § 158(a), "an appeal of right [in United States District Courts] lies from 'final judgments, orders, and decrees' entered by bankruptcy courts 'in cases and proceedings.'" *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 39 (2020) (quoting 28 U.S.C. § 158(a)). "The Bankruptcy Code and Federal Rules of Bankruptcy Procedure require parties to appeal from a final order 'within 14 days after entry of the . . . order . . . being appealed.'" *Id.* at 40 (quoting 28 U.S.C. § 158(c)(2) and Fed. R. Bankr. P. 8002(a)). A reviewing court may "affirm, modify, or reverse" a bankruptcy judge's "judgment, decree, or order," or it may remand with instructions for further proceedings. 28 U.S.C. § 2106.

A district court reviews a bankruptcy court's denial of a motion to vacate under Rule 60(b) for abuse of discretion. *In re Mader*, 661 B.R. 1, 8 (E.D.N.Y. 2021) (collecting cases). "A court 'abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions.'" *Id.* (quoting *E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 99–100 (2d Cir. 2012)).

Finally, "[a]n appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal." *In re Mader*, 661 B.R. at 11 (quoting *Lora v. O'Heaney*, 602 F.3d

---

*LLC*, No. 23-BK-74049, Dkt. 113 (Vacatur Denial). The Court, therefore, confines this decision to the propriety of the Vacatur Denial and not the propriety of the Contempt Order itself.

106, 111 (2d Cir. 2010)). "That is, a motion for reconsideration 'is not a vehicle for relitigating old issues . . . securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Id.* (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)).

## DISCUSSION

The Bankruptcy Court's denial of Manor's motion to vacate is a final disposition of a discrete dispute. *Walker v. HSBC Bank USA, Nat'l Ass'n*, No. 24-CV-8477 (PKC), 2025 WL 2256654, at *3 (E.D.N.Y. Aug. 7, 2025). Such final dispositions are "immediately appealable." *Ritzen Grp.*, 589 U.S. at 39 (internal citations omitted). Manor filed his notice of appeal on September 23, 2024, (Manor Br., Dkt. 3, at 1), which is ten days after the Bankruptcy Court issued the Vacatur Denial, (Not. of Appeal, Dkt. 1, at ECF 1). Accordingly, Manor's appeal is within the 14-day statutory limit, and the Court has jurisdiction to hear the appeal. 28 U.S.C. § 158(c)(2); Fed. R. Bankr. P. 8002(a).

## I.    The Bankruptcy Court's Exercise of Personal Jurisdiction over Manor

Manor challenges the Bankruptcy Court's determination that it had the requisite personal jurisdiction over him to find him in contempt, arguing that: (1) this exercise of personal jurisdiction did not comport with due process; (2) Manor was not properly served with the Subpoena; and (3) the Subpoena was deficient because it did not specify the date and time of the deposition. The Court addresses these arguments in turn.

### A.    Due Process

A bankruptcy court's exercise of personal jurisdiction over a non-party must "be consistent with the Due Process Clause of the Fifth Amendment." *In re Three Arrows Cap., Ltd.* ("*In re Three Arrows II*"), 649 B.R. 143, 148 (Bankr. S.D.N.Y. 2023) (quoting *In re Bozel S.A.*, 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010)).

1.    Manor's Involvement in the Manor Chapter 11s Did Not Amount to Consent to Personal Jurisdiction in the Freeman Villa Chapter 7

Manor argues that "his status as a debtor" before the Bankruptcy Court "at the time the . . . Subpoena and the Contempt Motion were served on [him]" did not provide a basis for finding personal jurisdiction over him as a non-party to the Freeman Villa Chapter 7 with respect to those filings.  (Not. of Appeal, Dkt. 1, at ECF 14; *see also* Manor Br., Dkt. 3, at 14–17.)  According to Manor, his involvement in the Manor Chapter 11s "in no way open[ed] [him] up to other lawsuits in the same jurisdiction, where [he] [had] not consent[ed] and no other jurisdictional basis [was] available."  (*Id.* at 16–17 (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)).  The Trustee argues that the Bankruptcy Court properly exercised personal jurisdiction over Manor both because Manor had consented to the Bankruptcy Court's jurisdiction via the Manor Chapter 11s, and because Manor's minimum contacts within this district provided another jurisdictional basis.  (Trustee Br., Dkt. 7, at 6–7.)  Manor does not address or dispute whether he had minimum contacts sufficient to establish personal jurisdiction.

"[C]ourts 'must have personal jurisdiction over a non[-]party in order to compel [the non-party] to comply with a valid discovery request.'"  *In re Three Arrows II*, 649 B.R. at 148 (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014)).  In bankruptcy proceedings, "[a]ny analysis of personal jurisdiction over" a non-party "must be framed around [their] minimum contacts with the United States as a whole," as "the 'forum state' is the United States."  *Id.* (first citing *In re Bozel S.A.*, 434 B.R. at 97; and then citing *In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008)).  "[O]nce minimum contacts are established, a court considers those contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'"  *Charles Schwab*

8

*Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).  Personal jurisdiction "[may] be waived," and "[a] variety of legal arrangements have been [construed] to represent express or implied consent to the personal jurisdiction of the court."  *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131–32 (2d Cir. 2022) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982)).  "With a few exceptions, however, '[a] party's consent to jurisdiction in one case [] extends to that case alone.  It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available.'"  *Id.* at 132 (quoting *Klinghoffer*, 937 F.2d at 50 n.5); *see also Jurisdiction*, Black's Law Dictionary (12th ed. 2024) (defining "consent jurisdiction" as "[j]urisdiction that parties have agreed to, either by accord, by contract, or by general appearance").

Manor argues that his consent to jurisdiction in the Manor Chapter 11s in this district does not translate to consent to jurisdiction before the Bankruptcy Court in the Freeman Villa Chapter 7, and claims that, indeed, he does not consent to jurisdiction in that proceeding.  (Manor Br., Dkt. 3, at 16–17.)  The Court agrees with Manor that Second Circuit authority holds that his consent to jurisdiction in the Chapter 11 Proceedings does not, by itself, grant the Bankruptcy Court personal jurisdiction over him in the Freeman Villa Chapter 7.  *V&A Collection, LLC*, 46 F.4th at 131–32 (citations omitted).  Thus, the Court finds that it was error for the Bankruptcy Court to conclude that Manor "cannot now claim lack of personal jurisdiction in another case pending in" the same Bankruptcy district, i.e., the Freeman Villa Chapter 7, despite Manor having "availed himself of the benefits and protections of this Court for over three years while his personal bankruptcy and related corporate bankruptcies were pending."  (Not. of Appeal, Dkt. 1, at ECF 14 (citing *In re Thompson*, No. 06-BK-32871, 2007 WL 1447897, at *5 (Bankr. E.D. Tenn., May 14, 2007)).)

The case on which the Bankruptcy Court relies, *In re Thompson*, is inapposite because there, unlike here, debtors who had initiated that very bankruptcy proceeding then later contested the bankruptcy court's jurisdiction.  2007 WL 1447897, at *1.  Here, while Manor has certainly initiated three Chapter 11 proceedings within the same district, he did not initiate the Freeman Villa Chapter 7—Kenner did so.  (Not. of Appeal, Dkt. 1, at ECF 10.)  The Court next analyzes whether this error was "harmless," i.e., whether there is available any basis, other than consent jurisdiction, for the Bankruptcy Court to exercise personal jurisdiction over Manr.  Fed. R. Bank. P. 9005 (stating that Rule 61 applies to determine whether a bankruptcy court's error was harmless); Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error . . . by the court . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantive rights.").

> 2.  Manor's Business Activities in this District Established the Minimum Contacts Necessary to Support the Bankruptcy Court's Finding of Personal Jurisdiction over Manor in the Freeman Villa Chapter 7

As previously noted, the Trustee argues that Manor had minimum contacts with this district at the time of Subpoena and the Contempt Motion that were sufficient to establish personal jurisdiction before the Bankruptcy Court in the Freeman Villa Chapter 7.  (*See* Manor Reply, Dkt. 9.)  "[M]inimum contacts necessary to support [personal] jurisdiction exist where" a non-party "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."  *Charles Schwab Corp.*, 883 F.3d at 82 (quoting *Licci*, 732 F.3d at 170).  Manor is the 99% owner of two LLCs, M1 Development and M Rental, both of which listed the Brooklyn Address as their addresses of record in their respective Chapter 11 proceedings.  *See supra* at 2.  And M1 Development owns at least 5% of Freeman Villa, whose

principal place of business is New York.  *Id.* at 2–3.  It is abundantly clear to the Court that, at the time of the Subpoena and the Contempt Motion, Manor had availed himself of the privilege of doing business not only in the United States, *see In re Three Arrows II*, 649 B.R. at 148, but specifically in this district, which encompasses Brooklyn.  The Bankruptcy Court, too, found that "Manor availed himself of the benefits and protections of" that court, (Not. of Appeal, Dkt. 1, at ECF 14), though the Bankruptcy Court did so while making the erroneous finding described *supra* at 9–10.  Thus, the minimum contacts necessary to support the Bankruptcy Court's exercise of personal jurisdiction over Manor existed here, which supports a finding that the Bankruptcy Court's error was harmless.  Fed. R. Civ. P. 61.

### 3.    The Bankruptcy Court's Assertion of Personal Jurisdiction over Manor Comported with Fair Play and Substantial Justice

The second step of the personal jurisdiction inquiry is "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  *In re Fairfield Sentry Ltd.*, 669 B.R. 257, 281 (Bankr. S.D.N.Y. 2025) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)).  "Where the plaintiff 'makes the threshold showing of the minimum contacts required for [exercising personal jurisdiction], a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*, No. 19-CV-5610 (NRB), 2021 WL 4461773, at *3 (S.D.N.Y. Sep. 29, 2021)).  For this analysis, courts consider factors such as "the burden on the [non-party], the interests of the forum in adjudicating the case, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies."  *Id.* (citing *Bank Brussels Lambert*, 305 F.3d at 129).

11

As mentioned, Manor did not respond to the Trustee's minimum contacts argument[9] and therefore does not address whether the Bankruptcy Court's exercise of jurisdiction over him would be reasonable.  The Court finds that each of these factors supports the finding that the Bankruptcy Court's exercise of personal jurisdiction over Manor clearly "comport[s] with traditional notions of fair play and substantial justice," *id.* (quoting same), and thus was reasonable.  For the same reasons, the Bankruptcy Court's erroneous reasoning for exercising personal jurisdiction over Manor was a harmless error.  Fed. R. Civ. P. 61.

*      *      *

Thus, while it was error for the Bankruptcy Court to exercise personal jurisdiction over Manor on the basis of the Manor Chapter 11s, that error was ultimately harmless, and it was not an abuse of discretion for the Bankruptcy Court to find that it had personal jurisdiction over Manor with respect to the Subpoena and Contempt Motion in the Freeman Villa Chapter 7.

### B.    Service of the Subpoena

Bankruptcy Rule 9016 governs service of subpoenas and states that Rule 45 "applies in a bankruptcy case."  Fed. R. Bankr. P. 9016.  Manor argues that the Bankruptcy Court's exercise of personal jurisdiction over him was improper because the Trustee purportedly did not serve the Subpoena on Manor, who was living in Israel at the time, in a manner that comported with Rule 45 and/or Bankruptcy Rule 2004(e), which requires certain entities serving as witnesses to be tendered mileage and witness fees.  The Court addresses his arguments in turn.

---

[9] Based on Manor's failure to address this argument in his Reply, the Court could deem the argument opposed.  *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 536 n.19 (E.D.N.Y. 2017) (citation omitted).

1.    Rule 45

Rule 45(b)(3), which governs service of a subpoena in a foreign country, states that "28 U.S.C. § 1783 ['Section 1783'] governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country."  Fed. R. Civ. P. 45(b)(3).  In rejecting Manor's argument that Section 1783 applies, the Bankruptcy Court determined that it "does not apply here because the Trustee did not serve Manor 'in a foreign country,'" but "served Manor in Brooklyn," as well as the law firms that represented Manor in the Manor Chapter 11s.[10]  (Not. of Appeal, Dkt. 1, at ECF 15.)  Accordingly, the Bankruptcy Court found that service needed to only comply with Rule 45(b)(1)–(2).  (*Id.*)

On appeal, Manor challenges this finding, contending that Rule 45(b)(3) instead governs. (Manor Br., Dkt. 3, at 17–18.)  It is not clear to the Court whether the Trustee contests Manor's claim that Rule 45(b)(3) governs.  First, the Trustee states that "[a]ssuming *arguendo* that Manor was actually residing in Israel, it is without question that he took no steps whatsoever to inform the Bankruptcy Court . . . that he was no longer at the [Brooklyn Address] which continued to remain on the dockets of" the Manor Chapter 11s, with which Manor was involved.  (Trustee Br., Dkt. 7, at 7.)  Next, the Trustee implicitly argues that service was proper under Section 1783 and states that "the relevant inquiry is whether the discovery sought by the Trustee is (i) necessary in the interests of justice; and (ii) not possible to obtain the discovery in another manner."  (Trustee Br., Dkt. 7, at 7–8 (citing *In re Three Arrows Cap. Ltd.* ("*In re Three Arrows I*"), 647 B.R. 440,

---

[10] While the Bankruptcy Court's reasoning here could have been more fully developed, for reasons the Court explains further in this section, any error in making this determination was harmless.  Fed. R. Civ. P. 61.

451 (Bankr. S.D.N.Y. 2022)). [11] )   Notwithstanding the Trustee's seeming concession that Rule 45(b)(3) governs here, the Court considers whether service of the Subpoena on Manor needed to comply with Rule 45(b)(1) and (2) or only with Rule 45(b)(3).

The Bankruptcy Court issued the Subpoena on March 29, 2024.  (Not. of Appeal, Dkt. 1, at ECF 11.)  Though, as noted, in February 2024, the Trustee knew that Manor was in Israel at least some of the time between March and August 2024, *see supra* n.5, when the Manor Chapter 11 Proceedings concluded in August 2024, the address of record for Manor and the two companies in the Manor Chapter 11s was the Brooklyn Address, (Not. of Appeal, Dkt. 1, at ECF 9, 17).  It was not until July 2024 that Manor submitted to the Bankruptcy Court a declaration, dated June 24, 2024, stating that he had been living in Israel since March 29, 2024—the date of the Bankruptcy Court's Order authorizing the Subpoena—and that he had "no plans to return to the [United States] at [that] time."  (*Id.* at ECF 12.)  According to the Bankruptcy Court, this declaration was "the first statement by Manor on the record in [the Freeman Villa Chapter 7] case that he resides in Israel," and "Manor still ha[d] not disclosed his alleged address in Israel." (*Id.*)

The Court does not find compelling Manor's argument that, when the Bankruptcy Court issued the Subpoena, Manor should have been served in accordance with Rule 45(b)(3) because he was no longer living at the Brooklyn Address, but had permanently relocated to Israel.  Nothing in the record before this Court indicates or even suggests that the Trustee or the Bankruptcy Court knew, or should have known, that Manor had stopped living at the Brooklyn Address altogether.  As the Bankruptcy Court stated, Bankruptcy Rule 7004 "imposes on a debtor the duty to keep the

---

[11] While the Trustee does not mention Section 1783 or Rule 45(b)(3) in his brief, *In re Three Arrows I* makes clear that these two factors address whether service is proper under Section 1783.  647 B.R. at 450–51.

Court apprised of any change of address," (*id.* at ECF 14 n.3), yet Manor never updated the address listed in the Manor Chapter 11s, i.e., the Brooklyn Address. And, as discussed further *infra*, the Trustee served the Subpoena via certified mail to that same address. Thus, the Court does not find that it was an abuse of discretion for the Bankruptcy Court to decline to vacate its determination that Rule 45(b)(3) does not apply here. *Cf. United States v. Mellon*, 719 F. App'x 74, 76–77 (2d Cir. 2018) (summary order) (finding service to a New York City address appropriate under Rule 4 when the recipient claimed to live in Switzerland because "a person can have two or more 'dwelling houses or usual places of abode,' provided each contains sufficient indicia of permanence'" (quoting *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991)).

Still, the Court addresses the parties' arguments as to whether service was proper under Rule 45(b)(3) and Section 1783. In making this determination, the Court must consider whether the discovery sought from Manor was: "(1) necessary in the interests of justice; and (2) not possible to obtain in any other manner." *In re Three Arrows I*, 647 B.R. at 451. The Subpoena sought only Manor's testimony, and not any documents. (Not. of Appeal, Dkt. 1, at ECF 11.) Surprisingly, Manor neglects to argue that his testimony was not necessary in the interests of justice or that the information he would have provided through his testimony could have been obtained elsewhere. (Manor Br., Dkt. 3.) As to the first factor in this analysis, the Trustee argues that "the information controlled by Manor was essential to the Trustee's administration of the bankruptcy case" because: the Trustee's authorized representative, "Kenner[,] had no knowledge of any of [Freeman Villa's] operations"; "Manor played an integral role in [Freeman Villa's] operations"; Manor's "level of responsibility within [Freeman Villa] would have aided the Trustee in his discharge of his fiduciary obligations"; and "Manor was arguably the only party with knowledge regarding the nature, extent, and access to [Freeman Villa's] assets, particularly as to the building located in Brooklyn."

(Trustee Br., Dkt. 7, at 8.)  To the second factor, the Trustee argues that the information controlled by Manor was not available elsewhere because Kenner "knew nothing, despite the fact that he executed the bankruptcy petition and schedules," and the Trustee's subpoenas on other "non-party witnesses[] all . . . proved fruitless." (*Id.* at 8–9.)  In his Reply, Manor argues primarily that certain of the Trustee's arguments are "unsupported in the record." (Manor Reply, Dkt. 9, at 4.)  Further, "[t]he Trustee's statement . . . that Kenner 'knew nothing' and that service of subpoenas on non-party witnesses proved 'fruitless' are . . . without support and indeed are contradicted by the Trustee's Complaint,[12] in which he makes several allegations based on information provided by Kenner." (*Id.*)

Manor is correct that, in the Complaint filed in the Bankruptcy Court, the Trustee describes several facts based on Kenner's testimony. (*See* Manor Br. App., Dkt. 3-1, at ECF 42–45.)  Still and importantly, the Trustee also states in the Complaint that Kenner "had <u>never</u> visited the actual Brooklyn Property, the only asset of [Freeman Villa]." (*Id.* at ECF 42.)  This supports the Trustee's argument that Manor's testimony was necessary to provide information "regarding the nature, extent, and access to [Freeman Villa's] assets, particularly as to the building located in Brooklyn." (Trustee Br., Dkt. 7, at 8.)  Further, the Complaint states that "Kenner described himself as the 'manager' of [Freeman Villa], but not in the 'legal sense.'" (Manor Br. App., Dkt. 3-1, at ECF 42.)  Indeed, as previously stated, Freeman Villa's February 1, 2024 statement of financial affairs lists Manor as the Manager, and Manor asked Kenner to represent Freeman Villa while Manor was in Israel. (Not. of Appeal, Dkt. 1, at ECF 10–11.)  These facts both support the Trustee's argument that "Manor played an integral role in [Freeman Villa's] operations" and that

---

[12] (*See* Manor Br. App., Dkt. 3-1, at ECF 40–51 (Trustee's Complaint).)

his "level of responsibility within [Freeman Villa] would have aided the Trustee in his discharge of his fiduciary obligations."  (Trustee Br., Dkt. 7, at 8.)  Thus, the Court finds that Manor's testimony was "necessary in the interests of justice" in accordance with Rule 45(b)(3) and Section 1783.  *In re Three Arrows I*, 647 B.R. at 451.

As to whether it would be possible to obtain the information to which Manor would testify by any other means, Manor does not provide any credible reasons for casting doubt on the Trustee's claims that the other third-party subpoenas proved unavailing, nor does Manor present alternative suggestions for information he clearly possesses and Kenner does not.  The Court therefore finds the second factor also satisfied.  *Id.*

Thus, the Court finds that the Bankruptcy Court did not abuse its discretion by declining to vacate its determination that service of the Subpoena did not need to comply with Rule 45(b)(3) and, even if Rule 45(b)(3) did apply, service on Manor satisfied Rule 45(b)(3)'s requirements.

### 2. Alternative Service

Rule 45(b)(1) states that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1).  "However, the word 'delivering' is not defined," and "courts in the Second Circuit have found . . . [that] Rule 45 does not require in-hand service nor prohibit alternative means of service."  *Ramchandani v. CitiBank Nat'l Ass'n*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022) (first citing *SEC v. Pence*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017); and then citing *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116 (PGG), 2009 WL 1313259, at *2 (S.D.N.Y. May 11, 2009)).  "In doing so, such courts have recognized that the functional purpose of requiring delivery to the named person is to ensure receipt, so that notice will be provided to the recipient, and enforcement of the subpoena will be consistent with the requirements of due process."  *In re Three Arrows I*, 647 B.R. at 453 (citation and internal quotation marks

omitted).  Indeed, "the Court recognizes that service of process via means other than personal service is quite common in this Circuit."  *Id.* at 454.

Manor challenges the Trustee's use of alternative service, stating that "the Trustee made no attempt to personally serve Manor, nor did he seek leave of the [Bankruptcy] Court to serve Manor by alternative means."  (Manor Br., Dkt. 3, at 22.)  Manor argues that this is contrary to authority from courts in this Circuit which, he claims, permit substitute service only after, first, diligent attempts to effectuate personal service are made, and, second, prior court authorization for substitute service is obtained.  (*Id.*, at 20–22 (collecting district court cases).)  He explains that this requirement "protects witnesses from new applications of law of which they would have no reason to know."  (*Id.* at 23 (citations omitted).)

The Trustee concedes that he did not first attempt personal service on Manor in Israel before using alternative means, nor seek prior approval of the alternative means of service. (Trustee Br., Dkt. 7, at 9.)  The Trustee, however, argues that his use of alternative service, via certified mail, was a reasonable means of service and that "it is clear from the Bankruptcy Court's decision that the alternative means of service taken by the Trustee were appropriate under the specific circumstances."  (*Id.* at 10.)

a.    Prior Attempts

First, the Court addresses whether it was necessary for the Trustee, prior to attempting service via alternative means, to have diligently attempted to effectuate personal service.  The Bankruptcy Court did not directly analyze this issue.  It is correct, as Manor argues, (Manor Br., Dkt. 3, at 20–22), that some "courts that have sanctioned alternative means of service have done so only after the plaintiff . . . diligently attempted to effectuate personal service," *Simmons v. Fervent Elec. Corp.*, No. 14-CV-1804 (ARR) (MDG), 2014 WL 4285762, at *1 (E.D.N.Y.

Aug. 29, 2014) (collecting cases).  But caselaw "is not entirely consistent in imposing this requirement, and other cases have found that it is not necessary to show prior attempts at standard service before seeking court approval."  *In re Three Arrows I*, 647 B.R. at 454 (citing *Ultradent Prods., Inc. v. Hayman*, No. M8-85 (RPP), 2002 WL 31119425, at *4 (S.D.N.Y. Sep. 24, 2002)).  And, as the Trustee argues, "requiring a 'diligent prior attempt' at service would have been futile given the actions taken by Manor," which included failing to "disclose an address for service in Israel," and failing to correct his address on "the docket in any one of the [three] cases in which he was involved."  (Trustee Br., Dkt. 7, at 10.)  Indeed, Manor "continued to file documents which contained the Brooklyn [A]ddress" in the Manor Chapter 11s "despite the fact that he now alleges he was in Israel at the time."  (*Id.*)  Manor does not dispute this on Reply, arguing only that the address listed in his personal bankruptcy case "is entirely irrelevant."  (Manor Reply, Dkt. 9, at 5.)  But this seemingly purposeful deception by Manor alone undermines his argument that it was unreasonable or improper for the Trustee not to first attempt personal service on him prior to using alternative means of service.

In sum, given the conflicting caselaw on this issue and Manor's conduct in the Manor Chapter 11s, the Court finds that the Bankruptcy Court did not abuse its discretion by denying Manor's motion to vacate and thereby implicitly finding that the Trustee did not need to attempt personal service on Manor before serving Manor via alternative means.

b.    Court Approval

Next, the Court addresses whether it was necessary for the Trustee, prior to attempting service via alternative means, to have requested authorization for alternative service from the Bankruptcy Court.  The Bankruptcy Court did not directly analyze this issue either, though it retroactively found proper service on Manor at his Brooklyn Address "along with service to the

Nutovic and Rosen Law Firms," thus implicitly approving alternative service on Manor.  (Not. of Appeal, Dkt. 1, at ECF 17.)  Manor is again correct that the weight of district court decisions in this Circuit have, as a "prerequisite to substitute service," required "prior court authorization" of that service.  (Manor Br., Dkt. 3, at 20–22 (collecting cases).)  *See Waheed v. Rentoulis*, No. 24-CV-6476 (AT) (HJR), 2024 WL 4803900, at *1 (S.D.N.Y. Nov. 15, 2024) ("Although case law is split as to whether a subpoena may be validly served . . . by any means other than personal delivery to the witness . . . alternate service *must be authorized by a court*." (quoting *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011)).  The Trustee contends that while he did not ask the Bankruptcy Court to authorize alternative means of service, "it is clear from the Bankruptcy Court's decision that the alternative means of service taken by the Trustee were appropriate under the specific circumstances," and other district courts in this Circuit "have found that it is not necessary to show prior attempts at standard service before engaging in alternative means of service."  (Trustee Br., Dkt. 7, at 10 (citing *Ultradent Prods., Inc.*, 2002 WL 31119425, at *4).)

The Trustee cites only one case, *Ultradent Products, Inc.*, where the district court retroactively authorized alternative service under Rule 45 after a party had not first "moved for an order in advance of the service."  2002 WL 31119425, at *4.  While *Ultradent Products, Inc.* is viewed by some courts as "an outlier," *Advent Int'l Corp. v. El-Mann*, No. 24-MC-0016 (MKV), 2024 WL 3639072, at *5 n.7 (S.D.N.Y. Aug. 2, 2024) (citing *Ultradent Prods., Inc.*, 2002 WL 31119425, at *4), it is not the sole instance where a court in this Circuit has retroactively authorized alternative service.  In *W.J. Deutsch & Sons Ltd. v. Zamora*, No. 21-CV-11003 (LTS), 2023 WL 5609205, at *6–7 (S.D.N.Y. Aug. 30, 2023), the court authorized alternative service under Rule 4(f), not Rule 45, "*nunc pro tunc*" in part because the alternative service

"gave . . . timely actual notice"[13] to the person to be served.  *But see In re Old DDUS, Inc.*, 659 B.R. 810, 831 (Bankr. S.D.N.Y. Apr. 30, 2014) (explaining, under the standard for service pursuant to Rule 4, that "[w]hile there is some authority outside this district for the retroactive approval of alternative service[,] . . . [the court] think[s] the better view is that such approval should be obtained in advance" (collecting cases)).

Still, neither the text of Rule 45 nor any binding Second Circuit authority requires prior court authorization of alternative service, and so the Bankruptcy Court's denial of Manor's motion to vacate its decision to retroactively authorize alternative service was not "base[d] . . . on an error of law or . . . the wrong legal standard," nor was it based on "a clearly erroneous factual finding." *In re Mader*, 661 B.R. at 8 (quoting *KarenKim, Inc.*, 698 F.3d at 99–100).  However, a court may also abuse its discretion if it "reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Id.* (quoting same).  As explained, at least one other district court within this Circuit, in *Ultradent Products, Inc.*, 2022 WL 31119425, has also retroactively authorized alternative service on a Rule 45 subpoena, and a second, *W.J. Deutsch & Sons Ltd.*, 2023 WL 5609205, has retroactively authorized service under Rule 4, so the Bankruptcy Court's determination is within the range of permissible decisions.  Further, as a practical consideration, it is clear that the outcome

---

[13] *W.J. Deutsch & Sons Ltd.* concerned attempted service under the Hague Convention, as to which the Second Circuit emphasizes the importance of actual notice.  2023 WL 5609205, at *5–6; *Safran Electrs. & Def. SAS v. Exail SAS*, 764 F. Supp. 3d 133, 141(S.D.N.Y. 2025) ("It is the law in this Circuit that good-faith, but incomplete, attempts at service under the Hague Convention are ordinarily deemed valid where the respondent received actual notice." (citation omitted))..  While Manor did not raise the Hague Convention in his briefing here, the Court notes that he did raise it to the Bankruptcy Court.  (Not. of Appeal, Dkt. 1, at ECF 15.)  As explained further *infra*, the Court here finds that Manor had actual notice of the Subpoena and Contempt Motion.

here would have been the same whether or not the Trustee had first sought authorization from the Bankruptcy Court before attempting to serve Manor via certified mail: the Bankruptcy Court certainly would have granted the Trustee's request, and Manor would have been served in the same way he ultimately was. (*See* Not. of Appeal, Dkt. 1, at ECF 17 ("[T]he [Bankruptcy] Court finds that service to Manor at [the Brooklyn Address] along with service to the Nutovic and Rosen Law Firms was reasonably calculated to ensure receipt of the . . . Subpoena and the Motion for Contempt by Manor.").) Thus, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Manor's motion to vacate by retroactively and implicitly authorizing service of the Subpoena on Manor via alternative means.[14]

c.    Notice

The crux of the Bankruptcy Court's analysis of the sufficiency of service of the Subpoena rests on its findings not only that the service to Manor and his attorneys was "reasonably calculated to ensure receipt of the Subpoena," but also that "[i]t would be beyond reason to find that Manor was not aware of the . . . Subpoena" in the months after it was served. (Not. of Appeal, Dkt. 1, at ECF 15, 17.) The Bankruptcy Court so found because it was clear that the Brooklyn Address was still a viable way to reach Manor, and because activity in the Manor Chapter 11s showed that Manor and his counsel spoke after the Subpoena was served on them.[15] (*Id.* at ECF 17.)

---

[14] While Manor notes that the purpose of court authorization prior to attempting methods of alternative service is to "protect[] witnesses from new applications of law of which they would have no reason to know," (Manor Br., Dkt. 3, at 23 (citations omitted)), the Court does not find it credible that Manor "would have no reason to know" that service via certified mail was a possibility. As explained further *infra*, courts commonly accept service via certified mail as a form of alternative service, and they have done so for some time. *See, e.g.*, *Ultradent Prods., Inc.*, 2002 WL 31119425, at *3 (finding service by certified mail sufficient under Rule 45).

[15] Manor does not directly claim that his counsel did not advise him of the Subpoena, instead observing that in the Trustee's opposition to Manor's motion to vacate, the Trustee wrote:

Furthermore, as noted in the Notice of Appeal in this case, "it is incumbent upon a debtor in bankruptcy to notify the [Bankruptcy] Court of any change of address, yet Manor's address of record remained unchanged." (*Id.*) Indeed, in the Bankruptcy Court's Reason for Decision, it noted that, even as of *August 26, 2024*, the operating reports signed by Manor as the responsible party that were filed in the M1 Development and M Rental Chapter 11 cases listed the Brooklyn Address as Manor's address. (*Id.* at ECF 17.) Finally, there is nothing in the record before the Bankruptcy Court indicating that any package sent to Manor at the Brooklyn Address was returned as undeliverable. (*Id.*) These circumstances supported the Bankruptcy Court's conclusion that it was no "coincidence that Manor's Motion to Vacate was filed on the last date he had to comply with the [S]ubpoena before monetary sanctions accrued," (*id.* at ECF 18 (citation omitted)); in other words, the Bankruptcy Court found that Manor had received actual notice of the Contempt Order and thus the date by which he had to take some action to avoid sanctions. Further evidence of Manor's actual notice of the Contempt Order, as well as the Subpoena, is that even before filing his motion to vacate, Manor agreed to sit for video conference deposition. (Manor Br. App., Dkt. 3-1, at ECF 60 ("Manor's counsel advised, via e-mail, on July 2, 2024, that the deposition would not go forward."); *id.* at ECF 10–11 (Manor's July 2, 2024 motion to vacate).) And "at no time has Manor claimed that he did not receive the . . . Subpoena or Motion to Compel in time to comply." (Not. of Appeal, Dkt. 1, at ECF 18.)

---

"Manor's counsel did not advise Manor of the subpoena. Manor's counsel's time records are silent as to receipt of the subpoena." (Manor Reply, Dkt. 9, at 5.) It is, of course, possible that Manor's counsel spoke to him about the Subpoena without making a specific note of that discussion in their time records. In any event, the Court is not persuaded that the Trustee, rather than Manor, has the requisite knowledge as to whether Manor's counsel notified him of the Subpoena.

Still, Manor contends that service via certified mail[16] to the Brooklyn address and on his attorneys was not reasonably calculated to provide notice. (Manor Br., Dkt. 3, at 12 n.3.) To the contrary, service via certified mail appears to be a commonly used method of alternative service and has been for some time. *See, e.g.*, *Harrington Glob. Opportunity Fund v. BofA Sec.*, No. 21-CV-0761 (LGS), 2024 WL 2214310, at *1 (S.D.N.Y. May 16, 2024) (authorizing service via certified mail with return receipt (citations omitted)); *Ramchandan*, 616 F. Supp.3d at 357–58 (granting motion for alternative service to permit service by certified mail "in furtherance of the 'just, speedy, and inexpensive determination' of [the] case," and finding that such service "comports with due process since [the third party] already has notice of the subpoena" (quoting Fed. R. Civ. P. 1)); *United States v. Holland*, No. 19-CV-2456 (DG) (JMW), 2023 WL 3570667, at *2 (E.D.N.Y. May 18, 2023) ("Courts within this Circuit tend to favor alternative service by certified mail return receipt requested, rather than overnight mail, as valid alternate service" (collecting cases).). Thus, the Court finds that service via certified mail with return receipt requested, as a general matter, is reasonably calculated to provide notice under Rule 45.

Furthermore, as mentioned, despite Manor's protests as to the methods of service, he does not directly claim that he did not receive actual notice of the Subpoena in time to comply. In a

---

[16] Though Manor claims that the Trustee does not report the Subpoena was sent by certified mail with a return receipt requested, (Manor Br., Dkt. 3, at 4–5), the Trustee states that "service upon Manor was made via certified mail, return receipt requested," (Trustee Br., Dkt. 7, at 2). Manor is incorrect. The Court has independently verified that return receipt was requested by checking the tracking information for the certified mail to Manor, which confirms that return receipt was requested and that the subpoena was delivered "to an individual" at the Brooklyn Address "on April 3, 2024." (*See* Manor Br. App., Dkt. 3-1, at ECF 32 (showing tracking number 9414711206204386262574)); *see also* USPS Tracking, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9414711206204386262574# (last visited August 8, 2025) (stating the "item was delivered to an individual" on April 3, 2024, and listing "Return Receipt" as one of the "Features" of this package).

footnote, he claims (without citing any caselaw) that "[m]a[i]ling a subpoena to an address listed as Manor's address in another bankruptcy case when the Trustee knew he was in Israel provides no notice," and "[s]erving two attorneys who interacted with Manor but whose scope of retention was limited by orders entered in those bankruptcy cases to matters related to those two bankruptcy cases is not reasonably calculated to provide Manor with notice," "[e]specially if those attorneys believe the mailing of subpoenas to them has no effect on an individual living in Israel." (Manor Br., Dkt. 3, at 12 n.3.) Nowhere, however, does Manor state that his attorneys, irrespective of their theoretical beliefs about what constitutes adequate service, failed to timely inform him of the Subpoena, nor does he state that he did not receive actual notice of it.

This purely theoretical argument is dubious at best, as one of the attorneys whom the Trustee served, Isaac Nutovic, represents Manor in both the Freeman Villa Chapter 7 and in the appeal before this Court, and so clearly his scope of retention has extended beyond the scope of the Manor Chapter 11s.[17] (Manor Br. App., Dkt. 3-1, at ECF 32–33 (4/1/2024 Affidavit of Service).) And most convincingly, and as already explained, Manor in fact agreed to a video conference deposition after the Bankruptcy Court found him in contempt and before monetary sanctions began accruing, but backed out of that deposition and instead filed his motion to vacate the Contempt Order. (Manor Br. App., Dkt. 3-1, at ECF 78 ("[The Bankruptcy] Court does not believe that it is a coincidence that Manor's Motion to Vacate was filed on the last day he had to

---

[17] The Court notes that some district courts have found "[u]nlike service of most litigation papers, service on an individual's lawyer will not suffice" for Rule 45 subpoenas. *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Ams.*, 262 F.R.D. 293, 304 (S.D.N.Y. 2009) (collecting cases). While there does not appear to be binding authority on this point, the Court reasons that service on Manor's attorneys makes it more likely than not that Manor received timely actual notice of the subpoenas; the Court does not opine as to whether service on his counsel, on its own, would suffice under Rule 45.

comply with the [S]ubpoena before monetary sanctions accrued.").)  Thus, because service via certified mail with return receipt is reasonably calculated to provide notice, and because the facts refute any claim that Manor's attorneys did not inform him of the Subpoena after they were served with it, it is abundantly clear, as the Bankruptcy Court found, that Manor had actual notice of the Subpoena.  *See First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 50, 55 (2d Cir. 2002) (finding that a Rule 45 subpoena was properly served on an entity when the entity "waived any objection to the manner of service" by "not claim[ing] lack of actual notice," even though "compliance with the service requirements may not have been exact," because the forms of service "were substantial and sufficient" (citations omitted)); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) ("We therefore hold that the only limitation upon service under Rule 45 is that the procedure employed be reasonably calculated to give the non-party actual notice of the proceedings and an opportunity to be heard." (citing *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950))).

### 3.   Fees

The Bankruptcy Court found "it appropriate to waive the mileage fee" required by Rule 45(b)(1) because "the Trustee was ready[,] willing[,] and able to conduct Manor's 2004 deposition by video conference."  (Not. of Appeal, Dkt. 1, at ECF 19.)  Despite arguing that the Bankruptcy Court's waiver of fees prior to service "violated [his] right of due process," Manor fails to show that a mileage fee is warranted for a deposition conducted by video conference. (Manor Br., Dkt. 3, at 26.)  In arguing that the Trustee should have paid both mileage and witness fees, Manor cites to one Second Circuit case from 1951 and two out-of-circuit district court cases from the 1980s.  (*Id.* at 27–28 (first citing *Saper v. Hague*, 186 F.2d 592, 593 (2d Cir. 1951)); then citing *In re Little's Motor Co., Inc.*, 53 B.R. 635, 638–39 (Bankr. N.D. Ala. 1985); and then citing

*In re Food Supplement Co. Inc.*, 33 B.R. 188, 189 (Bankr. S.D. Fla. 1983)).)  These decisions all pre-date the use of video conference depositions and therefore provide no support for Manor's argument regarding mileage fees.  The Bankruptcy Court, therefore, did not abuse its discretion by declining to vacate its determination that mileage fees were not necessary here.  *See Pérez Ortega v. Mister Price, Inc.*, No. 21-CV-1050 (MEL), 2022 WL 1092696 (D.P.R. Apr. 11, 2022) ("It would not be reasonable to require Plaintiff to furnish mileage fees for a deposition conducted via videoconference.").

Regarding witness fees, the Bankruptcy Court found "it appropriate . . . to allow the Trustee to pay any applicable witness fee at any time prior to the deposition" if the law ultimately requires payment of a witness fee to Manor.[18]  (Not. of Appeal, Dkt. 1, at ECF 19.)  The Trustee does not address Manor's argument regarding the witness fee.  Generally speaking, technical violations of the Federal Civil Rules "do[] not *per se* constitute a deprivation of due process."  *In re Kalikow*, 602 F.3d 82, 92 (2d Cir. 2010) (citing *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254 (2d Cir. 1995)).  While the failure to tender a witness fee alongside service of the Subpoena may constitute a technical violation of Rule 45, it does not offend the due process clause, which requires "the method of service" to be "'reasonably calculated' to notify" the party against whom relief is sought.  *See Baker*, 72 F.3d at 254–55 (collecting cases); *see also SEC v. Collector's Coffee, Inc.*, No. 19-CV-4355 (VM), 2023 WL 8433691, at *1 (S.D.N.Y. Dec. 5, 2023)

---

[18] The Bankruptcy Court appeared to consider it possible that Manor could eventually be designated as the Debtor in the Freeman Villa Chapter 7, rendering a witness fee unnecessary pursuant to Bankruptcy Rule 2004(e)(2), though he "ha[d] not [yet] been officially designated as an individual responsible for the Debtor."  (Not. of Appeal, Dkt. 1, at ECF 19.)  As Bankruptcy Rule 2004(e)(1) requires payment of a witness fee only for non-debtor entities, if Manor is designated as the Debtor, the Trustee would not be required to pay him a witness fee.  Fed. R. Bankr. P. 2004(e)(1).

(declining to find "persuasive [a witness's] contention that a failure to contemporaneously tender witness fees renders the [s]ubpoena a 'nullity'" when witness fees were tendered "after service of the [s]ubpoena").  Thus, the Court finds no abuse of discretion in the Bankruptcy Court declining to vacate its determination that immediate payment of Manor's possible witness fee was not necessary here.

### C.    Contents of the Subpoena

Manor also contends that the Subpoena "was fatally deficient" because it "did not set forth a specified time and place for him to attend and testify."[19]  (*Id.* at 29 (citing *Instuform Techs., Inc. v. Cat Contracting, Inc.*, 168 F.R.D. 630, 633 (N.D. Ill. 1996)).)  The Subpoena stated that the date and time of the deposition was "to be scheduled."  (Manor Br. App., Dkt. 3-1, at ECF 30.)  The Trustee states that "it is customary to provide the witness with an opportunity to contact the issuing attorney and arrange a mutually agreeable date and time to conduct the oral deposition."  (Trustee Br., Dkt. 7, at 11.)  The Court again finds that while the omission of a date and time for the deposition might be a technical violation of Rule 45, it is not a violation of due process.  *See In re Kalikow*, 602 F.3d at 92 (finding "reasonable notice" of a motion that did not name every party against whom relief was sought was "sufficiently descriptive" to alert non-named parties who were served).  Thus, it was not an abuse of discretion for the Bankruptcy Court to decline to vacate its determination that the Subpoena was valid.

---

[19] Manor did not raise this argument before the Bankruptcy Court in support of his motion to vacate, and so he has waived it.  (Manor Br. App., Dkt. 3-1, at ECF 12–20.)  Still, the Court addresses this argument briefly.

## II.    The Bankruptcy Court's Finding of Contempt

Manor presents additional challenges to the Bankruptcy Court's denial of his motion to vacate the Contempt Order—that service of the Contempt Motion was not proper and that the Contempt Order erroneously stated that Manor had failed to produce documents—and contends that the Bankruptcy Court erred by not allowing him to purge its contempt finding.

### A.    Local Civil Rule 83.6

Manor argues that the Trustee did not properly serve the Contempt Motion on Manor by failing to follow Local Civil Rule 83.6, which requires service to be made either "personally . . . in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons," or, if "the alleged contemnor has appeared in the action by an attorney, [by service] . . . on that attorney." Loc. Civ. R. 83.6(a).  The Trustee does not address this argument, instead maintaining that the Bankruptcy Court generally possessed the authority to hold Manor in contempt.  (Trustee Br., Dkt. 7, at 11–13.)    The Bankruptcy Court determined that the Trustee's service of the Contempt Motion on Manor was proper for the same reasons it found proper service of the Subpoena, discussed *supra*, namely that "service" of the Contempt Motion "was reasonably calculated to ensure receipt by Manor." (Not. of Appeal, Dkt. 1, at ECF 17.)  First, the Bankruptcy Court "reject[ed]" Manor's argument that Local Civil Rule 83.6 required personal service of the motion.  (*Id.* at ECF 18–19.)  Second, the Bankruptcy Court found that service on Manor's counsel in the Manor Chapter 11s was appropriate to satisfy Local Civil Rule 83.6.  (*Id.*)   Third, the Bankruptcy Court found that service of the Contempt Motion comported with "[Bankruptcy Rule] 7004, which is the bankruptcy complement to [Rule] 4 governing service of process," because Manor was served at the address listed in the Manor Chapter 11s.  (*Id.* at ECF 19–20.)

29

Manor argues that service of the Contempt Motion on his attorneys was improper because the Bankruptcy Court's reasoning purportedly hinges on a determination that the Manor Chapter 11s and the Freeman Villa Chapter 7 "were essentially merged for jurisdictional purposes." (Manor Br., Dkt. 3, at 31.)  While it is true that, at the time of service, Manor had not yet "appeared" in the underlying bankruptcy action here, i.e., the Freeman Villa Chapter 7, "by an attorney," Loc. Civ. R. 83.6(a), as already explained, Manor has since appeared in the Freeman Villa Chapter 7 and is represented there by Isaac Nutovic, one of the attorneys who was served with the Contempt Motion.  Further, there is nothing in the record to suggest that neither Manor nor his counsel received actual notice of the Contempt Motion.  Manor argues only that actual notice does not suffice for compliance with Local Civil Rule 83.6.  (Manor Br., Dkt. 3, at 30–31.) The cases on which he relies, however, are non-binding district court decisions.[20]  Furthermore, one of the cited cases, *Absolute Nevada, LLC*, 2020 WL 5209730, at *4, in turn cites to a Second Circuit decision finding that an earlier equivalent of Local Civil Rule 83.6 "requires actual notice," *Drywall Tapers & Pointers of Greater N.Y. Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989).

The Court agrees with the Bankruptcy Court that, under the facts of this case, service on Manor's attorneys—even if, at the time of service, they did not yet represent him in the Freeman Villa Chapter 7—satisfied Local Civil Rule 83.6.  *See also Allstate Ins. Co. v. Mirvis*, No. 08-CV-

---

[20] *See CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-8087 (CM), 2013 WL 324061, at *1–2 (S.D.N.Y. Jan. 24, 2013) (finding sufficient under Local Civil Rule 83.6 and Rule 4(f)(3) service on respondent's counsel via express mail and by hand to respondent's residences); *Absolute Nevada, LLC v. Grand Majestic Riverboat Co. LLC*, No. 19-CV-11479 (PKC), 2020 WL 5209730, at *5 (S.D.N.Y. Sep. 1, 2020) (finding service via mail sufficient after several failed attempts at personal service), *aff'd in relevant part*, 2022 WL 350255, at *2 (2d Cir. Feb. 7, 2022) (summary order).  (Manor Br., Dkt. 3, at 30–31.)

4405 (PKC) (PK), 2019 WL 13545765, at *3 (E.D.N.Y. Oct. 28, 2019) (finding service of contempt motion via certified mail "effected personal service of the" contempt motion "in compliance with Local Civil Rule 83.6" (citing No. 08-CV-4405, Dkt. 594-4 (receipt of service via certified mail))), *see also United States v. Thompson*, 921 F.3d 82, 87–88 (2d Cir. 2019) ("Contempt proceedings may move forward upon a showing of actual notice, but only so long as the court making the contempt finding already has personal jurisdiction over the" party to be held in contempt. (citations omitted)); *cf. W.J. Deutsch & Sons Ltd.*, 2023 WL 5609205 at *8 (finding, under Hague Convention, proper service on foreign defendant's counsel, even when counsel "declined to say whether the firm would be 'able to accept service'" on defendant's behalf "because the firm had not yet consulted with [him] regarding" service and could not "'even represent . . . that [the firm] will be representing [him] in this matter'").

The Court next addresses Manor's argument that the Bankruptcy Court erred in interpreting Local Civil Rule 83.6 as permitting service under Bankruptcy Rule 7004, which governs service of summonses in Bankruptcy Court, because Local Civil Rule 83.6 "[does] not say that service can be made in accordance with [Rule] 4." (Manor Br., Dkt. 3, at 31.) Local Civil Rule 83.6, however, allows service "in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons." Rule 4, in fact, governs service of summonses, and so Bankruptcy Rule 7004 is analogous to it. Bankruptcy Rule 7004 permits service by mail. Fed. R. Bankr. P. 7004(b). The Court's analysis and conclusion regarding service by certified mail of the Subpoena also applies to the Motion for Contempt, and so the Court finds the Bankruptcy Court did not abuse its discretion by declining to vacate its determination that service of the Motion for Contempt was adequate.

### B.    Manor's Opportunity to "Purge" the Contempt Finding

Manor last argues that "[t]he Bankruptcy Court erroneously denied Manor an opportunity

to purge his contempt."  (Manor Br., Dkt. 3, at 33.)  It is unclear to the Court what Manor means

by this, as the Bankruptcy Court quite clearly provided Manor the opportunity to attempt to purge

his contempt.  Manor filed a motion to vacate the Bankruptcy Court's Contempt Order, and the

Bankruptcy Court held two hearings on his motion.  While the Bankruptcy Court, of course,

ultimately denied Manor's motion to vacate, that is not the same thing as denying Manor the

"opportunity" to purge the Contempt Order.

Manor also argues that "[i]t was an abuse of discretion for the Bankruptcy Court to issue

an order of contempt[21] against [him] without first notifying Manor that [the Bankruptcy Court]

considered the Trustee's mail service of the Subpoena to be effective."  (Manor Br., Dkt. 3, at 34.)

Manor relies on some district court decisions declining to impose contempt sanctions on

non-parties who have failed to comply with subpoenas, where an order directing compliance with

the subpoena was not first issued by the court.  (Manor Br., Dkt. 3, at 32–33 (citing, e.g., *Plaza*

*Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH), 2021 WL 4356011 (E.D.N.Y

Sep. 24, 2021) ("In civil litigation, it would be rare for a court to use contempt sanctions without

first ordering compliance with a subpoena" (quoting Fed. R. Civ. P. 45(g) advisory committee's

note to 2013 amendment)) and *In re Shur*, 184 B.R. at 644 (explaining that the court was "reluctant

to consider the harsh remedy of contempt without first placing [the non-party] upon notice" that

service comported with due process)).)  However, while it is more common and arguably more

---

[21] Once again, Manor appears to mistakenly believe that he is challenging the Bankruptcy
Court's Contempt Order, rather than the Bankruptcy Court's Vacatur Denial.  The Court construes
his arguments as applying to the Vacatur Denial, as that is what Manor appealed.  (Not. of Appeal,
Dkt. 1, at ECF 1.)

desirable for courts to first order compliance with a subpoena before finding the witness or party

in contempt for failing to do so, "Rule 45 grants the court the power to hold a party in contempt

'simply on the basis of failure to comply with a subpoena.'"  *Hunter TBA, Inc. v. Triple V Sales*,

250 F.R.D. 116, 117 (E.D.N.Y. 2008) (quoting *PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D.

247, 249 (S.D.N.Y. 2002)).

Here, it is undisputed that Manor failed to respond to the Subpoena "in any way," and

neither he "nor his counsel appeared" at the June 17, 2024 hearing on the Trustee's motion to

compel.  (Not. of Appeal, Dkt. 1, at ECF 11 (citation omitted).)  As Manor has not claimed that he

did not receive actual notice of the Subpoena or the Trustee's motion for contempt, it is clear that

he could have attempted to avoid being found in contempt by either timely responding to the

Subpoena or by appearing at the June 17, 2024 hearing on the motion to compel.  Having done

neither, Manor cannot now claim that the Bankruptcy Court abused its discretion by finding him

in contempt without first advising Manor that the court believed that service of the subpoena and

motion to compel on him were both proper.  Thus, while it may have been unusual for the

Bankruptcy Court to have found Manor in contempt without first clarifying that the Bankruptcy

Court had deemed service proper or ordering compliance, it was not an abuse of discretion for the

Bankruptcy Court to decline to vacate the Contempt Order on that basis.

### C.    The Subpoena Ordered Only Manor's Deposition

Manor also argues that the Contempt Order erroneously stated that "Manor failed to obey

an order requiring him to produce documents," because the Subpoena only commanded Manor to

appear for a deposition, and not to produce any documents.  (Manor Br., Dkt. 3, at 14; Manor Br.

App., Dkt. 3-1, at ECF 30 (subpoena requiring Manor's appearance for a deposition but not

requiring him to produce documents)).  He "requests that the matter be remanded to the Bankruptcy

Court with instructions to correct its recital that Manor disobeyed an order to produce documents."[22] (Manor Br., Dkt. 3, at 34; *see also* Manor Br. App., Dkt. 3-1, at ECF 52 (Contempt Order stating that the Trustee "moved for the entry of an Order compelling [Manor] to comply with [the Bankruptcy] Court's Order . . . and produce the documents demanded").)

Manor is correct that the Subpoena did not command him to produce documents. (*See* Manor Br., Dkt. 3-1, at ECF 30; Not. of Appeal, Dkt. 1, at ECF 11 (Vacatur Denial confirming that Subpoena "did not seek documents").) Manor, however, mistakenly asserts that "[t]he Contempt Order, in its opening paragraph recited, incorrectly, that the Trustee had required Manor to produce documents." (Manor Br., Dkt. 3, at 5.) Rather, the Contempt Order's opening paragraph recites that the Trustee "*moved* for the entry of an Order compelling [Manor] to comply with [the Bankruptcy] Court's Order . . . and produce the documents demanded." (Manor Br. App., Dkt. 3-1, at ECF 52 (emphasis added).) In other words, the Contempt Order stated that the Trustee requested that the Bankruptcy Court require Manor to produce documents. But the Bankruptcy Court did not do so in the Contempt Order, instead ordering Manor only to appear for an oral deposition. (*Id.* at ECF 52–53.) It appears the Bankruptcy Court included this recitation in the Contempt Order merely to describe the Trustee's notice of hearing for the Contempt Motion, which did provide notice that the Trustee intended to move for an order compelling Manor "to produce those documents demanded" in the Subpoena. *In re Freeman Villa LLC*, No. 23-BK-74049, Dkt. 100, at 1. Manor represents that an erroneous finding that he failed to produce documents in response to a subpoena "could prevent Manor from getting a discharge

---

[22] Manor does not provide a legal argument or basis for this request, and the Vacatur Denial does not address this issue. Still, the Court construes Manor's request as a challenge to the Vacatur Denial's implicit declination to reconsider the relevant language within the Contempt Order.

should he choose to file another bankruptcy proceeding." (Manor Br., Dkt. 3, at 14.) But, because there was no finding that Manor failed to produce documents request in the Subpoena, the Court does not find that any corrective action is warranted.

## CONCLUSION

For the foregoing reasons, the Court denies Manor's appeal in its entirety. The Bankruptcy Court's Vacatur Denial is affirmed. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

_/s/ Pamela K. Chen_ _____
Pamela K. Chen
United States District Judge

Dated: September 29, 2025
         Brooklyn, New York

35